# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

**IN RE FORCE PROTECTION, INC.
SECURITIES LITIGATION**

Consolidated Civil
Action No. 2:08-cv-845-CWH

## LEAD PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

**DUFFY & YOUNG, LLC**
Brian C. Duffy (Fed. Bar # 9491)
J. Rutledge Young III (Fed. Bar # 7260)
Lee Anne Walters (Fed. Bar # 10243)
96 Broad Street
Charleston, South Carolina 29401
Telephone:  (843) 720-2044
Facsimile:  (843) 720-2047
bduffy@duffyandyoung.com
ryoung@duffyandyoung.com
lwalters@duffyandyoung.com

*Liaison Counsel*


**BERMAN DeVALERIO**
Norman Berman, Esq.
Jeffrey C. Block, Esq.
Kristin J. Moody, Esq.
One Liberty Square
Boston, Massachusetts 02109
Telephone:  (617) 542-8300
Facsimile:  (617) 542-1194
nberman@bermandevalerio.com
jblock@bermandevalerio.com
kmoody@bermandevalerio.com

*Co-Lead Counsel for the Class*

**POMERANTZ HAUDEK
GROSSMAN & GROSS LLP**
Marc I. Gross, Esq.
Jason S. Cowart, Esq.
R. James Hodgson, Esq.
100 Park Avenue
New York, New York 10017
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
migross@pomlaw.com
jscowart@pomlaw.com
rjhodgson@pomlaw.com

Patrick V. Dahlstrom, Esq.
10 South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

*Co-Lead Counsel for the Class*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT .......................................................................................................... 3

    A.    THE REPRESENTATIVE PLAINTIFFS' CLAIMS ARE TYPICAL OF THE CLAIMS OF THE CLASS ............................................................3

        1.    The Timing of Plaintiffs' Purchases Does Not Render Them Atypical................................................................................ 4

        2.    Trautman and Panteli Poulikakos Are Not Subject to a Unique Defense ......................................................................... 6

    B.    THE REPRESENTATIVE PLAINTIFFS WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS ...................... 8

        1.    Defendants' Suggestion that Lead Plaintiffs Misled the Court and Joined the Litigation for Improper Reasons Is Belied by the Record......... 8

        2.    The Proposed Class Representatives Have Actively Managed the Litigation.......................................................................... 11

    C.    PLAINTIFFS HAVE ADEQUATELY DEMONSTRATED LOSS CAUSATION UNDER FOURTH CIRCUIT PRECEDENT.............................. 16

        1.    Loss Causation ......................................................................... 16

        2.    The Class Period .................................................................... 19

CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*In re Alstom SA Sec. Litig.*,
253 F.R.D. 266 (S.D.N.Y. 2008) ........................................................19

*In re Am. Italian Pasta Co. Sec. Litig.*,
2007 U.S. Dist. LEXIS 21365 (W.D. Mo. Mar. 26, 2007) ....................15

*In re Arakis Energy Corp. Sec. Litig.*,
1999 U.S. Dist. LEXIS 22246 (E.D.N.Y. April 30, 1999) ......................6

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)...................................................................14

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)......................................................................16, 17

*In re BearingPoint, Inc. Sec. Litig.*,
232 F.R.D. 534 (E.D. Va. 2006) ................................................3, 4, 8, 19

*Bovee v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003) ........................................................5, 6

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1988) ................................................................3

*Brown v. Charles Schwab & Co., Inc.*,
2009 U.S. Dist. LEXIS 114840 (D.S.C. Dec. 9, 2009)......................3, 13

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ..........................................................19

*Cooper v. Pac. Life Ins. Co.*,
458 F. Supp. 2d 1368 (S.D. Ga. 2006) ...................................................6

*Cosmas v. DelGiorno*,
1995 U.S. Dist. LEXIS 21146 (E.D.N.Y. Feb. 8, 1995)...........................6

*In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*,
250 F.R.D. 137 (S.D.N.Y. 2008) ..........................................................19

*In re Dayco Corp. Sec. Litig.*,
102 F.R.D. 624 (S.D. Ohio 1984) .........................................................15

*In re Diasonics Sec. Litig.*,
　599 F. Supp. 447 (N.D. Cal. 1984) ...................................................................1

*Dieter v. Microsoft Corp.*,
　436 F.3d 461 (4th Cir. 2006) .........................................................................3

*Dura Pharm., Inc. v. Broudo*,
　544 U.S. 336 (2005)......................................................................................6

*Eggleston v. Chi. Journeymen Plumbers' Local Union*,
　657 F.2d 890 (7th Cir. 1981) ...................................................................1, 11

*Feder v. Elec. Data Sys. Corp.*,
　429 F.3d 125 (5th Cir. 2005) .........................................................................5

*Gariety v. Grant Thornton, LLP*,
　368 F.3d 356 (4th Cir. 2004) ...........................................................16, 17, 19

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
　903 F.2d 176 (2d Cir. 1990).........................................................................5

*In re Gen. Elec. Sec. Litig.*,
　2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ....................................10

*Gen. Tel. Co. of Southwest v. Falcon*,
　457 U.S. 147 (1982)......................................................................................3

*Greenhouse v. MCG Capital Corp.*,
　392 F.3d 650 (4th Cir. 2004) .......................................................................18

*Gunnells v. Healthplan Serv., Inc.*,
　348 F.3d 417 (4th Cir. 2003) ........................................................3, 13, 14, 16

*Harrington v. City of Albuquerque*,
　222 F.R.D. 505 (D.N.M. 2004).....................................................................11

*In re IGI Sec. Litig.*,
　122 F.R.D. 451 (D.N.J. 1988)........................................................................3

*Iron Workers Local Number 25 Pension Fund v. Credit-Based Asset Serv. &
　Securitization, LLC*,
　616 F. Supp. 2d 461 (S.D.N.Y. 2009).............................................................10

*Johnson v. Pozen, Inc.*,
　2008 U.S. Dist. LEXIS 12004 (M.D.N.C. Feb. 15, 2008) .....................................8

*Klugmann v. Am. Capital Ltd.*,
    2009 U.S. Dist. LEXIS 71895 (D. Md. Aug. 12, 2009) ...........................................................8

*Kovaleff v. Piano*,
    142 F.D.R. 406 (S.D.N.Y. 1992) ...........................................................................................5

*Kronfeld v. Trans World Airlines, Inc.*,
    104 F.R.D. 50 (S.D.N.Y. 1984) ............................................................................................6

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) .........................................................................................19

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) .........................................................................................19

*Lehocky v. Tidel Tech., Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004) ...........................................................................................6

*In re Loewen Group Sec. Litig.*,
    233 F.R.D. 154 (E.D. Pa. 2005) .............................................................................................5

*McNamara v. Bre-X Minerals, Ltd.*,
    2003 U.S. Dist. LEXIS 25641 (E.D. Tex. Mar. 31, 2003) ...............................................1, 11

*In re Merck & Co. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005) ...................................................................................................1

*In re Micron Tech. Inc. Sec. Litig.*,
    247 F.R.D. 627 (D. Idaho 2009) ..........................................................................................19

*Mills Corp. Sec. Litig.*,
    257 F.R.D. 101 (E.D. Va. 2009) ..........................................................................................19

*In re Mutual Funds Invest. Litig.*,
    566 F.3d 111 (4th Cir. 2009) ...............................................................................................17

*Nat'l Student Mktg. Litig.*,
    1973 U.S. Dist. LEXIS 11662 (D.D.C. Oct. 2, 1973) .........................................................15

*In re Neopharm, Inc. Sec. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004) ...........................................................................................10

*In re Oracle Corp. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 35723 (N.D. Cal. Apr. 22, 2005) ....................................................15

*In re Organogenesis Sec. Litig.*,
  241 F.R.D. 397 (D. Mass. 2007).........................................................................19

*Oscar Private Equity Inv. v. Allegiance Telecom, Inc.*,
  487 F.3d 261 (5th Cir. 2007) ...............................................................16, 17, 19

*In re PEC Solutions, Inc. Sec. Litig.*,
  418 F.3d 379 (4th Cir. 2005) .......................................................................17, 18

*In re Red Hat, Inc. Sec. Litig.*,
  262 F.R.D. 83 (E.D.N.C. 2009) ....................................................................18, 19

*In re Rent-Way Sec. Litig.*,
  218 F.R.D. 101 (W.D. Pa. 2003) ........................................................................6

*Robinson v. Metropolitan-North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001)................................................................................3

*Roles Employees Ret. Trust v. Mentor Graphics Corp.*,
  136 F.R.D. 658 (D. Or. 1991) .............................................................................5

*Rosen v. Textron, Inc.*,
  369 F. Supp. 2d 204 (D.R.I. 2005)......................................................................6

*Ross v. Abercrombie & Fitch Co.*,
  2008 U.S. Dist. LEXIS 74538 (S.D. Ohio 2008)................................................19

*In re Royal Ahold N.V. Sec. and ERISA Litig.*,
  219 F.R.D. 343 (D. Md. 2003)........................................................................7, 8

*In re Safeguard Scientifics*,
  216 F.R.D. 577 (E.D. Pa. 2003)..........................................................................5

*Schleicher v. Wendt*,
  2009 U.S. Dist. LEXIS 24810 (S.D. Ind. March 2, 2009)...................................19

*Schreiber v. Worldco, LLC*,
  324 F. Supp. 2d 512 (S.D.N.Y. 2004)..................................................................6

*Shiring v. Tier Tech., Inc.*,
  244 F.R.D. 307 (E.D. Va. 2007) .......................................................................13

*Silverman v. Motorola, Inc.*,
  259 F.R.D. 163 (N.D. Ill. 2009).........................................................................10

*In re Sunbeam Sec. Litig.*,
    2001 U.S. Dist. LEXIS 25703 (S.D. Fla. July 3, 2001)..................................................8

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966)...................................................................................................14

*Taubenfeld v. Career Educ. Corp.*,
    2004 U.S. Dist. LEXIS 4364 (N.D. Ill. Mar. 19, 2004)..........................................7, 8

*Teachers Ret. Sys. of La. v. ACLN Ltd.*,
    2004 U.S. Dist. LEXIS 25927 (S.D.N.Y. Dec. 20, 2004) ...........................................3

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) ......................................................................................3

*Wagner v. Barrick Gold Corp.*,
    251 F.R.D. 112 (E.D.N.Y. 2008) ................................................................................6

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ......................................................................3, 10, 14

*Yang v. Odom*,
    2005 U.S. Dist. LEXIS 18089 (D.N.J. Aug. 16, 2005)...............................................6

Lead Plaintiffs Laborers' Annuity and Benefit Fund of Chicago (the "Chicago Laborers"), Gary Trautman ("Trautman"), Panteli Poulikakos, Niki and George Poulikakos, David J. Jager ("Jager"), and Bhadra Shah ("Shah") (collectively, the "Lead Plaintiffs") respectfully submit this Reply Memorandum of Law in Further Support of their Motion for Class Certification.[1]

## PRELIMINARY STATEMENT

Defendants' opposition to class certification is a textbook example of why "permitting defendants to police the adequacy of class representatives and class counsel is like 'permitting a fox . . . to take charge of the chicken house.'" *McNamara v. Bre-X Minerals, Ltd.*, 2003 U.S. Dist. LEXIS 25641, at *52 (E.D. Tex. Mar. 31, 2003) (quoting *Eggleston v. Chi. Journeymen Plumbers' Local Union*, 657 F.2d 890, 895 (7th Cir. 1981)) (ellipsis in original). Because "defendants will rarely have the best interests of the class at heart" (*In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 267 (3d Cir. 2005)), they "often seek to cast aspersions on the adequacy of class representatives and counsel while truly seeking to have no class certified at all." *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 451 (N.D. Cal. 1984) (quoting *Eggleston*, 657 F.2d at 895).[2]

---

[1] George Poulikakos withdrew his request to be appointed as a class representative. As counsel explained to the Court at the lead plaintiff hearing, his son Panteli acts as the spokesman for the Poulikakos family in this lawsuit. *See* Transcript of Motion Hearing before the Honorable C. Weston Houck (June 2, 2008) 12:8-12, attached as Exhibit 1 to the Declaration of Lee A. Walters, Esq. in Further Support of Lead Plaintiffs' Motion for Class Certification ("Walters Decl."). In addition, since George's wife Niki Poulikakos has a better command of the English language, it is unnecessary for George to be a class representative. Bhadra Shah also withdrew her request to be appointed class representative. Her son, who is a friend of Panteli Poulikakos, made the primary decisions for and with his mother regarding the relevant investments, and English is not her first language.

[2] Defendant Force Protection, Inc. ("Force Protection" or the "Company") and the individual defendants do not challenge the elements of numerosity (Rule 23(a)(1)) or commonality (Rule 23(a)(2)). Although they challenge the predominance element (Rule 23(b)(3)), their arguments in this regard are primarily directed to the question of whether Lead Plaintiffs have adequately alleged a predicate for the

1

The five proposed class representatives are ideally suited to represent the Class. They include an institutional investor with a professional investment manager who made trading decisions on its behalf and four well-educated and experienced individual investors. They are all well-aware of their duties as class representatives, are well-informed with respect to the basic facts of the claims alleged, and have no interests that are antagonistic to the Class. They are demonstrably motivated to recover everything they can on behalf of all investors who were defrauded by the defendants. On these points, defendants' opposition is tellingly silent.

Since defendants do not want a class certified, however, they offer subterfuge in place of substantive argument. First, Defendants seek to reargue the lead plaintiff motion by asserting that Lead Plaintiffs are not adequate because they were not candid about how they came together to form a group. Defendants ignore, however, the critical fact that that plaintiffs' counsel previously explained to the Court – at the lead plaintiff hearing held almost two years ago – precisely how and why the group was formed. Similarly, defendants twist innocuous statements in deposition transcripts to fit case law where courts have found that plaintiffs were not adequate or typical. In doing so, defendants ignore the overwhelming weight of that testimony and other undisputed facts that conclusively demonstrate the inapplicability of those decisions. Defendants contend that the Class Period should be cut off on November 13, 2007, yet they ignore the indisputable fact that the Company continued to mislead investors until March 2008 when it finally admitted that its prior financial statements were materially false. Perhaps most desperately, defendants rely on an out-of-circuit opinion that has been rejected by the vast majority of Federal courts to argue that Lead Plaintiffs have not established that they are entitled to the fraud-on-the-market presumption of reliance.

---

"fraud-on-the-market" presumption of reliance. Def. Mem. at 28-35. Defendants concede through their silence that a class action is superior to other methods of adjudicating the claims alleged.

Defendants would have this Court impose standards for class certification that would make it impossible for any class, in any case, to be certified. Not only do defendants' arguments lack case law support, they are contrary to the Fourth Circuit's admonition that "courts should give Rule 23 a 'liberal rather than restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency.'" *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 n.8 (4th Cir. 2006) (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003)). Each of Rule 23's requirements is easily satisfied here.

## ARGUMENT

### A.   THE REPRESENTATIVE PLAINTIFFS' CLAIMS ARE TYPICAL OF THE CLAIMS OF THE CLASS

To satisfy Rule 23's typicality standard, a class representative must establish that his claim is substantially similar to those of the Class. *Dieter v. Microsoft Corp.,* 436 F.3d 461, 467 (4th Cir. 2006). It is well settled that the claims of the class representative are not required to be "perfectly identical or perfectly aligned" (*id.*[3]), as the focus of the inquiry is on defendant's actions, not on plaintiff's behavior. *See, e.g.*, *Teachers Ret. Sys. of La. v. ACLN Ltd.*, 2004 U.S. Dist. LEXIS 25927, at *11-*12 (S.D.N.Y. Dec. 20, 2004); *In re IGI Sec. Litig.*, 122 F.R.D. 451, 456 (D.N.J. 1988). Typicality, therefore, "is satisfied when 'each class member's claim arises from the same *course of events*, and each class member makes similar legal arguments to prove the defendants' liability.'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001))

---

[3] *See also Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1988) (class representatives are not required to have "identical factual and legal claims in all respects"); *Brown v. Charles Schwab & Co., Inc.*, 2009 U.S. Dist. LEXIS 114840, at *22 (D.S.C. Dec. 9, 2009) (citing *Dieter*, 436 F.3d at 466-67) (same); *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) (citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)) (same).

(emphasis added).  In light of these standards, defendants' challenge to the typicality of Panteli and Niki Poulikakos and David Jager, on the ground that they were day traders who bought shares in the Company after the fraud was revealed, fails.

### 1.    The Timing of Plaintiffs' Purchases Does Not Render Them Atypical

Defendants' argument that the proposed representatives are subject to a unique defense (and are therefore not typical) because some of them purchased Force Protection stock after the Company's November 13, 2007 partial disclosure (*see* Def. Mem. § B.2) fails as a matter of fact and law.  Contrary to defendants' suggestion, the disclosure on November 13, 2007 was not a full disclosure of the fraud.  Thus, the fact that some of the proposed class representatives purchased Company stock after that date does not subject them to a unique defense or otherwise undermine the typicality of their claims.

On November 13, 2007, defendants disclosed that, as of the end of the third quarter of 2007, the Company's internal accounting controls were ineffective.  Defendants continued to mislead investors, however, until 2008.  On February 29, 2008, they finally admitted that Force Protection would be required to restate its financial statements for the third quarter of 2007.  This caused the Company's stock price to decline by 13%.  Two weeks later, on March 17, 2008, defendants admitted that the scope of the restatement would be greater than previously indicated.  This caused the Company's stock price to fall an additional 23%.  In light of these facts, the proposed class representatives' purchases of Company stock after November 13, 2007 do not subject them to a unique defense.  They, just like members of the Class, purchased shares at prices that were artificially inflated by defendants' failure to admit that the Company's prior financial statements were materially false and that its reported $23 million profit was actually a $616,000 loss.  *See BearingPoint*, 232 F.R.D. at 539 (plaintiff was entitled to "a presumption of reliance, based on the proposition that an investor who buys or sells stock at the price set by the

4

market does so in reliance on the integrity of the market price"; and the plaintiff's claims were typical of all others who purchased at an inflated price — *i.e.*, before the full disclosure).

In light of the fact that defendants only partially revealed their fraud on November 13, 2007, the cases upon which defendants rely are easily distinguished. All of these decisions involved one complete corrective disclosure which gave the proposed representatives full knowledge of the fraud.[4] Indeed, federal case law rejects defendants' assertion that it is "well established" that purchases after a disclosure necessarily render a plaintiff atypical (*see* Def. Mem. at 19). *See, e.g.*, *In re Loewen Group Sec. Litig.*, 233 F.R.D. 154, 163 (E.D. Pa. 2005) (such purchases do not create intra-class conflicts); *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 609-10 (S.D. Ohio 2003) (same).

Tellingly, defendants do not cite a single decision in which a court held that a plaintiff was atypical because of purchases following partial disclosures. As noted above, the full extent of defendants' fraud was not disclosed in one document or event. Rather, the truth trickled out over time in a series of partial disclosures as Force Protection attempted to create a soft landing. Lead Plaintiffs, like all other members of the Class, purchased at market prices which discounted

---

[4] Most courts hold that post-disclosure purchases do not, in themselves, create a unique defense or render a representative party atypical. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 138 (5th Cir. 2005). Moreover, unlike here, the cases cited by defendants all involved one full and complete disclosure. In *In re Safeguard Scientifics*, 216 F.R.D. 577 (E.D. Pa. 2003), for example, the proposed class representative "increased his holdings . . . after public disclosure of the alleged fraud" and said that he "would have made and in fact did purchase stock *regardless* of the fraudulent omission." *Id.* at 582 (emphasis added). Thus, in *Safeguard*, the court found that the defendants had made a "specific refutation" of the rebuttable presumption of reliance. Here, there is no evidence that any plaintiff would have purchased their stock had they known of the fraud. Defendants' reliance on *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176 (2d Cir. 1990), is misplaced for similar reasons, as well as the fact that the district court's earlier typicality holding was heavily influenced by the fact that a family relationship between the defendant and the proposed representative "furnish[ed] a significant increment to the unique defense factor" that undermined plaintiff's adequacy for purposes of Rule 23(a). *Gary Plastic*, 119 F.R.D. at 349. In *Kovaleff v. Piano*, there was one complete disclosure of fraud after which plaintiffs continued to purchase stock. 142 F.R.D. 406, 408 (S.D.N.Y. 1992). *Kovaleff* also differs from the facts here because the court found that the warrants at issue did not trade on an efficient market. Defendants also rely on *Roles Employees Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991), which also involved a complete disclosure of the alleged fraud.

5

the inflation related to the prior false statements and omissions.[5]  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

### 2.    Trautman and Panteli Poulikakos Are Not Subject to a Unique Defense

Defendants' assertion that Panteli Poulikakos and Trautman "engaged in highly unusual and speculative 'day trading'" (Def. Mem. at 1), is completely and utterly false.  A day trader is defined as "[a] stock trader who holds positions for a very short time (from minutes to hours) and makes numerous trades each day.  Most trades are entered and closed out within the same day." *See* http://www.investopedia.com/terms/d/daytrader.asp; *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 515 (S.D.N.Y. 2004).  The Securities and Exchange Commission states that "true day traders do not own any stocks overnight because of the extreme risk that prices will change radically from one day to the next, leading to large losses."  *See* http://www.sec.gov/investor/pubs/daytips.htm.

Panteli Poulikakos was no day trader.  There is not a single day during the entire Class Period on which he had a zero balance in Force Protection common stock – much less one on

---

[5] Even if the plaintiffs purchased after a disclosure for the purpose of "averaging down" – *i.e.*, to gain upside after the disclosure – such a trading strategy "does not create an atypical defense or rebut the presumption of reliance in determining whether a class should be certified."  *Cosmas v. DelGiorno*, 1995 U.S. Dist. LEXIS 21146, at *4 (E.D.N.Y. Feb. 8, 1995); *see also In re Arakis Energy Corp. Sec. Litig*., 1999 U.S. Dist. LEXIS 22246, at *12 (E.D.N.Y. April 30, 1999).  The timing of such purchases is a common investment technique used to recoup losses that courts repeatedly have held does not defeat typicality.  *See Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 117 (E.D.N.Y. 2008); *accord Yang v. Odom*, 2005 U.S. Dist. LEXIS 18089, at *17 (D.N.J. Aug. 16, 2005); *Kronfeld v. Trans World Airlines, Inc.*, 104 F.R.D. 50, 53 n.4 (S.D.N.Y. 1984).  Moreover, a class representative does not have to buy stock in the same periods as other investors.  *See Bovee*, 216 F.R.D. at 610 (timing of stock purchases by class representatives does not make their claims atypical).  The point at which class members made their purchases is an issue that goes to the question of damages; it does not subject them to unique defenses.  All investors have their own particular reasons for purchasing stock.  As long as they rely on the integrity of the market when making their purchases, all Class members satisfy typicality.  Furthermore, with regard to purchases that take place after a class period, it is well established that such purchases are irrelevant to class certification and to the litigation in general.  *See Cooper v. Pac. Life Ins. Co*., 458 F. Supp. 2d 1368, 1372 (S.D. Ga. 2006); *Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 209 (D.R.I. 2005); *Lehocky v. Tidel Tech., Inc.*, 220 F.R.D. 491, 501-02 (S.D. Tex. 2004); *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 114 (W.D. Pa. 2003).

which he purchased and sold his entire holdings in a single day.  He held a long position throughout the Class Period, and his pattern of trades does not meet the most basic definition of day trading.  *See* Transcript of Deposition of Panteli Poulikakos (Feb. 10, 2010) (Walters Decl. Ex. 5) 97:19-98:12, 102:18-21, 109:1-3 ("An extremely small fraction compared to my total holdings throughout the period was to profit from short-term volatility.").

Trautman was not a day trader either.  He purchased and sold shares, even on the same day, based on the belief that news concerning Force Protection "had come out" – not based on any day trader scheme.  *See* Transcript of Deposition of Gary Trautman (Mar. 9, 2010) (Walters Decl. Ex. 6) 48:24-49:9, 50:8-9.  Indeed, when defendants pointedly asked him during his deposition whether he employed a day trader strategy, Trautman replied:  "I've heard of people trying various day trading schemes, but I'm not familiar with their tactics."  *Id.* at 50:16-21. Moreover, a review of Trautman's transactions demonstrates that he was in and out on the same day on at most three occasions.  All of his other purchases were held longer.  His general pattern was to hold and take profits or minimize losses, like many other members of the Class, based on the news in the market about Force Protection.  *Id.* at 46:10-20, 49:25-50:15.  It is irrelevant that he was trading in the range of 10,000 to 13,000 shares.  Had he been trading small numbers of shares, defendants would be complaining that he had only a small interest in the litigation.

Finally, the three cases cited by defendants in support of their day trading argument are lead plaintiff decisions, not class certification decisions, where the courts were concerned that the proposed lead plaintiffs *might* be day traders.  Here, there is no evidence that either Panteli Poulikakos or Trautman was a day trader; thus, there is no risk of any potential unique defense.[6]

---

[6] Even if Panteli and Trautman were day traders, that alone would not necessarily render them atypical.  Courts have rejected the proposition that day traders "may not be able to rely on the 'fraud on the market' theory of reliance."  *Taubenfeld v. Career Educ. Corp.*, 2004 U.S. Dist. LEXIS 4364, at *12-*13 (N.D. Ill. Mar. 19, 2004) (citing *In re Royal Ahold N.V. Sec. and ERISA Litig.*, 219 F.R.D. 343, 354

### B.    THE REPRESENTATIVE PLAINTIFFS WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS

The proposed class representatives satisfy Rule 23's adequacy standard because they and their counsel possess the qualifications and ability to litigate the case and are free of interests antagonistic to the Class.  *See Bearing Point*, 232 F.R.D. at 541.

#### 1.    Defendants' Suggestion that Lead Plaintiffs Misled the Court and Joined the Litigation for Improper Reasons Is Belied by the Record

Defendants baselessly accuse Lead Plaintiffs of a "willingness to mislead the Court" concerning their roles in this action.  Def. Mem. at 8.  While these are strong accusations, had defendants paid attention during the lead plaintiff hearing they would know that all the facts that they claim were withheld from the Court were, in fact, *fully and freely discussed in open court*. Moreover, the deposition testimony demonstrates that the Lead Plaintiffs sought that status for precisely the reasons that Congress intended when it created the lead plaintiff role.  Defendants' argument here is an improper attempt to re-argue the lead plaintiff motion.[7]

Defendants brazenly assert, for example, that the Lead Plaintiff group was created for the sole purpose of allowing the lawyers to become lead counsel.  Def. Mem. § 4.A.2.  In doing so, however, they ignore the fact that during the lead plaintiff hearing, in response to the Court's question, "How did [the] group come together?" (Walters Decl. Ex. 1 at 6:17), Lead Plaintiffs'

---

(D. Md. 2003) ("where false information and misleading omissions pollute the market, all types of investors are injured")); *In re Sunbeam Sec. Litig.*, 2001 U.S. Dist. LEXIS 25703, at *1-*2 (S.D. Fla. July 3, 2001) (noting there is no "persuasive precedent or case law establishing that day traders . . . absent specific refutation of the rebuttable presumption of reliance, are not entitled to the presumption of reliance where they bought in an efficient secondary market").

[7] Defendants have no standing with regard to the appointment of lead plaintiff or lead counsel. *Johnson v. Pozen, Inc.*, 2008 U.S. Dist. LEXIS 12004, at *3 n.2 (M.D.N.C. Feb. 15, 2008) ("The consensus among courts is that Defendants have no standing to object to the proposed Plaintiff's motion [for lead plaintiff] because 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) expressly authorizes only class members to rebut the presumption that the proposed lead plaintiff is appropriate.").  Thus, defendants should not be permitted to re-litigate that motion at the class certification stage.  *Klugmann v. Am. Capital Ltd.*, 2009 U.S. Dist. LEXIS 71895, at *5 (D. Md. Aug. 12, 2009) ("Motions for the appointment of lead plaintiff and lead counsel are considered prior to and separately from motions for class certification.").

counsel candidly explained that the group came together at counsel's suggestion to satisfy the developed case law in the Fourth Circuit. *Id.* at 6:23-8:7.[8]

Defendants similarly claim that Chicago Laborers decided to become a lead plaintiff after a single half-hour meeting between Mr. Capasso and Mr. Block and that this was somehow improper. Def. Mem. at 9. The meeting, however, was also previously disclosed to the Court. Walters Decl. Ex. 1 at 7:3-7. Moreover, Defendants ignore additional facts — also previously explained to the Court — indicating that the Chicago Laborers sought lead plaintiff status after (i) Mr. Block's meeting with Mr. Capasso and the Board Chair, Carmen Iacullo; and (ii) discussing the merits of the case and having its Board unanimously vote to seek that appointment. Transcript of Deposition of James Capasso (Feb. 9, 2010) (Walters Decl. Ex. 2) 42:12-45:1; 139:5-11.

It should also have been no surprise to defendants when the Chicago Laborers testified at its deposition that counsel advised it of losses in its investment in Force Protection stock. *Id.* at 33:14-22. As counsel advised the Court during the lead plaintiff hearing, Berman DeValerio "has represented the Chicago Laborers for about three or four years now in PSLRA matters. So when we saw that the fund had suffered a pretty sizeable loss in Force Protection, we did an investigation. We thought that it was an appropriate case." Walters Decl. Ex. 1 at 6:18-7:7.[9]

---

[8] As explained during that hearing, counsel for the Chicago Laborers, Mr. Block, contacted Mr. Dahlstrom, counsel for the Poulikakos Group, since Block and Dahlstrom had worked together in the past and Chicago Laborers was concerned that it might be forced into a "shotgun marriage" – being forced to serve as lead plaintiff along with plaintiffs and counsel not of their choosing. Mr. Block and Mr. Dahlstrom recommended to their clients that they all work together, and the clients agreed. Walters Decl. Ex. 1 at 64:23-65:15.

[9] It is of no moment that Chicago Laborers delegated its authority to make investment decisions to Columbia Partners. In cases involving institutional investors, such as the pension funds here, courts have noted:

> Under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.*, Congress "anticipated and intended" large institutional investors to oversee securities cases. Because Operating Engineers is a pension fund, it lacks investment

Defendants' further attacks on Chicago Laborers based on the holding in *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Serv. & Securitization, LLC*, 616 F. Supp. 2d 461 (S.D.N.Y. 2009) are wholly misplaced.  *In Iron Workers*, a decision that has not been followed by any other court which has considered it,[10] the Court refused to appoint a union fund as lead plaintiff where the fund's representative demonstrated a complete unfamiliarity with the facts or basis of the case and was dependent on a single monitoring firm.  *Id*. at 466.  Here, in stark contrast, not only did Mr. Capasso demonstrate a complete understanding of the claims, but defense counsel even admitted, on the record, "that's a good overview, which is difficult to give of the claims."  Walters Decl. Ex. 2 at 199:24-200:1.

Further, consistent with the ruling in *Iron Workers*, Chicago Laborers has five to six monitoring firms and is not beholden to any one firm.  Contrary to the displaced institutional investor in *Iron Workers*, the Chicago Laborers' Board met, reviewed the facts of the case, and made an informed decision to seek appointment as lead plaintiff.  Indeed, the Chicago Laborers negotiated an attorney fee below the typical one-third retainer in contingent fee cases.  As this Court observed at the lead plaintiff hearing, "I think whether or not a party can represent a Class

---

> expertise and, more likely than not, its fiduciary duties would preclude it from making investment decisions on behalf of its beneficiaries.  Thus, to prohibit such an institutional investor from serving as a class representative merely because it delegated investment responsibilities to a money manager would appear to be in tension with the PSLRA.

*Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 172 (N.D. Ill. 2009) (quoting *In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 567 (N.D. Ill. 2004) (internal citations omitted)).  *See also WorldCom*, 219 F.R.D. at 282 (institutional investors "are likely to use advisors . . . to invest conservatively in securities they consider undervalued by the market"; and thus precluding institutions from participating in securities class actions would contravene the PSLRA's purpose to "increase the likelihood that institutional investors will serve as lead plaintiffs").

[10] *See In re Gen. Elec. Sec. Litig.*, 2009 U.S. Dist. Lexis 69133, at *15-*16 (S.D.N.Y. July 29, 2009) (noting that *Iron Workers* recognizes that no court has found the practice of "free monitoring" to be a conflict of interest; and appointing Berman DeValerio to represent an institutional investor as lead plaintiff where investor had more than one monitoring counsel); *Silverman v. Motorola, Inc.*, 259 F.R.D. 163 (N.D. Ill. 2009) (rejecting defendants' argument on class certification that institutional investor was inadequate because counsel provided free monitoring services as described in *Iron Workers*).

adequately, the negotiation of an adequate and fair and reasonable fee is part of that consideration." Walters Decl. Ex. 1 at 17:3-5.

The other Lead Plaintiffs became involved in this litigation for similarly legitimate reasons, which were explored during the lead plaintiff hearing. With respect to Trautman, Lead Counsel advised the Court that he was referred to Berman DeValerio by another firm "well before we filed our complaint in this case and before we published a notice." *Id.* at 7:8-12. As to the Poulikakos Group (Panteli, Niki and George Poulikakos, Jager and Shah), Lead Counsel told the Court that the Poulikakos Group "responded to a notice that was put out under the PSLRA. And they contacted the Pomerantz firm. They actually had a two and one-half hour meeting with the Pomerantz firm before they decided to go ahead and retain them to represent them as lead plaintiffs in this case." *Id.* at 67:9-15. Moreover, the Pomerantz firm was not the only one that Panteli Poulikakos interviewed before deciding which firm to select. Walters Decl. Ex. 5 at 58:5-12.

Contrary to defendants' characterizations, Lead Plaintiffs and their counsel have been absolutely forthright with this Court and became involved in the litigation for precisely the reasons that Congress intended when it created the lead plaintiff designation.[11]

### 2.    The Proposed Class Representatives Have Actively Managed the Litigation

Defendants also resort to baseless rhetoric when they allege that the proposed representatives "are unwilling and unable to control the litigation." Def. Mem. at 1. The

---

[11] As courts have noted, there are often ulterior motives behind arguments against the appointment of perfectly acceptable class representatives and counsel. "It is in a defendant's best interests to object to class counsel who are, in fact, best suited to protect the class and represent its interests." *McNamara*, 2003 U.S. Dist. LEXIS 25641, at *52-*55 (citing *Eggleston*, 657 F.2d at 895). Accordingly, "defendants arguing that the named plaintiffs and their counsel have conflicts of interest with the class members in an attempt to protect the interests of the absent class members and assist the Court in deciding the motion for class certification" is "viewed with scepticism." *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 512 (D.N.M. 2004) (citing *Eggleston*, 657 F.2d at 895).

proposed representatives have kept abreast of the litigation from its inception and have conferred

with Lead Counsel (either directly or through their designated spokespeople, Panteli Poulikakos

and Chicago Laborers) concerning the strategy and status of the litigation on numerous telephone

calls and emails.  *See, e.g.*, Walters Decl. Ex. 5 at 69:18-70:4, 164:15-17; Transcript of

Deposition of Niki Poulikakos (Feb. 11, 2010) (Walters Decl. Ex. 4) 29:22-30:4, 84:2-7;

Transcript of Deposition of David Jager (Feb. 12, 2010) (Walters Decl. Ex. 3) 43:20-44:8, 104:6-

8, 52:2-14, 49:6-17; Walters Decl. Ex. 2 at 76:8-10; 78:4.

Lead Plaintiffs readily acknowledged that they had met with counsel, as a group, twice

before their depositions.  Although they told the Court during the lead plaintiff proceedings that

they intended to meet as a group more often, Panteli Poulikakos explained at his deposition that

such group meetings were unnecessary because the Lead Plaintiffs exercised control of the

litigation via individual calls with counsel:  "I saw the [group] calls as an opportunity to

*collectively* get updates, but I knew my attorneys were doing a good job because there was a lot

of frequent conversation between my attorneys and myself."  Walters Decl. Ex. 5 at 69:24-70:4

(emphasis added).  Similarly, the Chicago Laborers had discussions with lead counsel "from

time to time, to see if anything is coming down the line in terms of the lawsuit."  Walters Decl.

Ex. 2 at 76:8-10.  Their calls were on an "as-needed basis."  *Id.* at 78:4.  There is no requirement

of how often plaintiffs and their counsel must confer as a group.  Having made the

representation, Lead Counsel should have convened the meetings more often.  But, given the

stay on discovery, and having supplied copies of all pleadings, motions and memoranda of law to

the members of the Group (*see* Walters Decl. Ex. 5 at 91:2-3; Ex. 4 at 29:22-30:4, 89:6-12; Ex. 3

at 34:23-35:2, 43:20-44:8, 104:6-8, 52:2-14), and having held one-on-one calls with the Chicago

Laborers, Trautman, and Panteli Poulikakos (who conferred with his parents, Jager and Shah's

son (*see* Walters Decl. Ex. 5 at 69:18-70:4, 164:15-17; Ex. 4 at 29:22-30:4)), Lead Counsel kept the members abreast of the material events in the case. Moreover, when the parties were briefing the motion to dismiss and while the motion was *sub judice*, there were no issues that needed to be addressed by the group. As Panteli Poulikakos stated, "I had no reason to believe that not having the meetings was detrimental to the case." Walters Decl. Ex. 5 at 72:17-19. He is correct; not having the meetings has not prejudiced the rights of the Class one iota.

While Defendants make much of the fact that the proposed representatives relied on Lead Counsel to draft the Amended Complaint, to respond to questions from the Court concerning a related derivative action, and to determine whether it was in the best interests of the Class to withdraw Bhadra Shah and George Poulikakos as proposed class representatives, these decisions are the provenance of attorneys, not laymen.[12] As the Fourth Circuit has recognized:

> It is hornbook law . . . that "[i]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative."

*Gunnells*, 348 F.3d at 430 (citations omitted); *see also Brown v. Charles Schwab & Co.*, 2009 U.S. Dist. LEXIS 114840, at *25 (D.S.C. Dec. 9, 2009). Moreover, the Circuit has held that a

---

[12] Defendants' reliance on *Shiring v. Tier Tech., Inc.*, 244 F.R.D. 307 (E.D. Va. 2007) is misplaced. There, the court declined to appoint a plaintiff as a class representative because he had interviewed with the defendant's Chief Financial Officer before being employed at the defendant company during which he received non-public information upon which he relied in making his purchases. *Id.* at 313. His subsequent lack of meaningful activity in the litigation (*see id.* at 316), is factually distinct from the representative plaintiffs here. There is no evidence that any of the representative plaintiffs relied on anything other than public information to make their purchases. Furthermore, the representatives have testified that they made their own investigations, have conferred often with counsel, and reviewed all of the major filings in the litigation.

class representative is allowed to rely on counsel to keep him abreast of developments and make strategic decisions in a class action lawsuit. *Id*.[13]

Defendants also ignore the case law from the Fourth Circuit and district courts with wide experience in securities litigation when they attack the Chicago Laborers as not playing a sufficiently active role in the litigation. Nothing defendants point to, however, is outside the norm of acceptable oversight of litigation. *See Gunnells*, 348 F.3d at 430; *WorldCom*, 219 F.R.D. at 287 ("While the defendants fault these named plaintiffs for deferring to lead plaintiff and for relying on their own counsel to interact with NYSCRF's counsel, these named plaintiffs are in fact cooperating in the efficient management of the litigation."). Defendants are also incorrect that Chicago Laborers does not lend any "sophistication" to this action. Def. Mem. at 11. The Fund employed the most sophisticated investment decision-maker in this action, Columbia Partners, but defendants chose not to depose them. As noted above, pension funds, like the Chicago Laborers, are expected to employ sophisticated investment advisors; and to cast any aspersions on the fact that the Chicago Laborers' investment decisions rested with Columbia Partners is to misunderstand the fiduciary duties of the Chicago Laborers as well as Congress's intentions of having such funds be representative parties in securities class actions. *See supra* note 9.

Defendants do not, because they cannot, argue that the representative plaintiffs have not reviewed all the pleadings or memoranda of law that have been filed in this case. Instead, they complain that none of the proposed representatives testified that they "actively contributed to drafting the Complaint or participated in any factual investigation upon which its allegations are

---

[13] Attacks on the adequacy of a class representative based on such knowledge have been "expressly disapproved" by the Supreme Court, and accordingly reliance on counsel should not disqualify a class representative. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966)).

purportedly based." Def. Mem. at 16. Query what portions of the complaint would defendants have non-lawyers with no personal knowledge of the facts draft? Do defendants seriously ask this Court to require plaintiffs to become private investigators in order to be adequate representatives of a class? What court would find counsel adequate to represent absent class members that would defer to a lay person to draft pleadings in complex securities class actions? Such a line of argument is frivolous and not even tangentially supported by any case law, law review, or commentary. Notwithstanding, Panteli Poulikakos did undertake his own investigation, and his numerous communications with counsel in this regard are protected by privilege.

Decisions regarding the legal and factual bases of complaints, motions and memoranda necessarily require a lawyer's judgment. Representative parties are not required to know, much less join in making decisions about, what should be contained in such filings. Likewise, the fact that the proposed class representatives did not advise Lead Counsel on how it should respond to the Court's inquiry about representing both shareholder and derivative claims does not indicate that they were not adequate representatives. Such representation did not create a potential conflict of interest that required client pre-approval.[14] Moreover, any such concern would have

---

[14] It has long been held that counsel may represent both class and derivative claims. *See Nat'l Student Mktg. Litig.*, 1973 U.S. Dist. LEXIS 11662, at *18-*19 (D.D.C. Oct. 2, 1973). More recently, courts, post-PSLRA, have allowed dual representation following a line of cases beginning with *In re Dayco Corp. Sec. Litig.*, 102 F.R.D. 624, 630 (S.D. Ohio 1984), which held that "'counsel can represent a stockholder bringing *both* an individual *and* a derivative action' because playing this dual role is only a 'surface duality' that presents *a potential* for conflict, and is not a *conflict per se*." *See also In re Oracle Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 35723, at *5 (N.D. Cal. Apr. 22, 2005) (same). In *Dayco*, the court reasoned that courts that did not allow dual representation "relied on the theoretical distinction between individual and derivative stockholder suits. That distinction is just that, a theoretical one, not rooted in the realities of most individual and derivative suits, which usually are 'equally contingent upon the proof of the same nucleus of facts.' . . . Typically, *both* such suits will attack some sort of alleged misconduct by corporate management, and diligent counsel can hardly be expected not 'to attack all fronts with equal vigor.' . . . For these reasons, the Court joins Judge Frankel in rejecting a per se rule against counsel representing both an individual and derivative plaintiff." 102 F.R.D. at 630. *See also In re Am. Italian Pasta Co. Sec. Litig.*, 2007 U.S. Dist. LEXIS 21365 (W.D. Mo. Mar. 26, 2007).

been addressed if the Court had decided (which it did not) to ask Lead Counsel to litigate those claims.

Defendants also make much of the decision, made in the best interests of the Class, to withdraw Bhadra Shah and George Poulikakos as proposed class representatives. That decision was discussed with and among Ms. Shah and George Poulikakos, as well as Panteli Poulikakos and Niki Poulikakos, prior to Lead Plaintiffs' formally withdrawing those individuals. Walters Decl. Ex. 4 at 77:22-78:2. Panteli Poulikakos, the spokesperson for the Poulikakos Group, later related the rationale to Jager, and counsel subsequently advised the Chicago Laborers and Trautman. Walters Decl. Ex. 2 at 173:5-14, 157:12-158:3. The decision was inherently based on legal grounds, which again required counsel's determination. There is nothing improper about plaintiffs relying on counsel to make such decisions. *Gunnells*, 348 F.3d at 430.

## C.    PLAINTIFFS HAVE ADEQUATELY DEMONSTRATED LOSS CAUSATION UNDER FOURTH CIRCUIT PRECEDENT

### 1.    Loss Causation

Defendants argue that plaintiffs are not entitled to the "fraud-on-the-market" presumption of class-wide reliance because they have not established loss causation under the test articulated by the Fifth Circuit in *Oscar Private Equity Inv. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007). Def. Mem. at 30. The Fourth Circuit, however, has not adopted *Oscar*. Indeed, it is in conflict with the standard articulated in the Supreme Court's decision in *Basic, Inc. v. Levinson*, 485 U.S. 224, 243-47 (1988); and it is inconsistent with recent Fourth Circuit pronouncements in *Gariety v. Grant Thornton, LLP*, 368 F.3d 356 (4th Cir. 2004) and its progeny with respect to the presumption:

> To gain the benefit of the presumption of fraud on the market, a plaintiff must prove (1) that the defendant made public misrepresentations; (2) that the misrepresentations were material; (3) that the shares were traded on an efficient

market; and (4) that the plaintiff purchased the shares after the misrepresentations but before the truth was revealed.

*In re Mutual Funds Invest. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009) (quoting *Gariety*, 368 F.3d at 364) (internal brackets omitted); *see also In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 387 (4th Cir. 2005) ("To establish reliance under a 'fraud on the market' theory, . . . a plaintiff needs only to show the means of dissemination and the materiality of the misrepresentation, not 'direct' reliance.") (citing *Basic*, 485 U.S. at 243-47).

The fundamental issue in *Gariety* that defendants seize upon, in asking this Court to adopt *Oscar*, is the Fourth Circuit's holding that district courts must do more than rely upon the allegations in a complaint to determine whether plaintiffs are entitled to the presumption.  *See Gariety*, 368 F.3d at 366.  Lead Plaintiffs have gone well beyond the complaint in demonstrating each element of the fraud-on-the-market theory:

- misrepresentations:    Duffy Decl. Ex.12 at 43;
- materiality:               Duffy Decl. Ex. 6-7, 11, 17, 19, 20-28, 31, 33-34, 43, 45-54;
- efficient market:        Duffy Decl. Ex. 6-7, 40, 43;
- plaintiff purchases:    Plaintiff Certifications.

Defendants do not challenge plaintiffs' showing that defendants made public misrepresentations, that the stock traded on an efficient market, or the timing of the representative plaintiffs' purchases.  Rather, defendants argue that Lead Plaintiffs have not proven materiality because they have not used "rigorous empirical analysis quantifying the degree to which price moves are not caused by alleged misrepresentation rather than non-'fraud' factors."  Def. Mem. at 32.  What defendants are saying is that plaintiffs did not proffer a statistical analysis to support loss causation, as required under *Oscar*.  *Id.*  While statistical analysis is one way to demonstrate materiality and causation, it is not the customary – let alone the exclusive – way to do so.

17

Materiality can be demonstrated by the nature and context of the misrepresentations. "A fact is material 'if there is a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact.'" *In re Red Hat, Inc. Sec. Litig.*, 262 F.R.D. 83, 91 (E.D.N.C. 2009) (citing *PEC Solutions*, 418 F.2d at 387). Here, the actionable false statements and omissions were critical to Force Protection's future business prospects and profitability. In deciding whether to purchase Force Protection stock, the misrepresentations addressed issues that a reasonable investor would find important, and which significantly altered the total mix of information. When the partial disclosures of the misrepresentations are viewed in context with the concomitant price declines, it is reasonable to assume that the declines were caused by the disclosures, as "such price drops may be evidence of materiality." *Id.* (citing *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 660-61 (4th Cir. 2004)).



E-mail from Damon Walsh to Paul Mann & Elaine McCusker (Mar. 26, 2008) (Walters Decl. Ex. 7) at FRPT-00051962 ¶ 3. This admission further puts the lie to defendants' argument that "the drop in Force Protection's stock price following the Company's announcement that it would

need to restate its quarterly financial results for 2007 . . . fails to supply the required showing of a price move caused by the fraud." Def. Mem. at 34.

Defendants' request for this Court to adopt *Oscar* is not supported by any district court within the Fourth Circuit that has addressed the issue (*see Red Hat*, 261 F.R.D. at 93-84; *Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 108 (E.D. Va. 2009)), and it is a minority position within the federal bar.[15] Lead Plaintiffs have satisfied the standard for demonstrating loss causation at the class certification stage under *Gariety* and its progeny.

## 2. The Class Period

Defendants' request to limit the Class Period is premised upon the faulty assumption, refuted above, that the fraud was fully revealed on November 13, 2007. Def. Mem. at 35. This assumption is irreconcilable with the fact that two of Force Protection's biggest surprises were yet to come: (1) the Company's February 29, 2008 announcement that it had discovered "significant accounting errors" that would require the restatement of its third quarter 2007 quarterly results, which caused a 13% drop in the Company's stock price; and (2) the Company's March 17, 2008 announcement that its accounting weaknesses were more significant than previously revealed, which caused the stock price to decline an additional 23%. Given these significant stock drops after the date on which Defendants claim *all* of the allegedly fraudulent information had been absorbed by the market, the Class Period should not be shortened. *See Mills Corp. Sec. Litig.*, 257 F.R.D. at 106 ("[A]t the class certification stage courts generally do

---

[15] *See In re LDK Solar Sec. Litig.*, 255 F.R.D. 519 (N.D. Cal. 2009); *Schleicher v. Wendt*, 2009 U.S. Dist. LEXIS 24810, at *12 (S.D. Ind. March 2, 2009); *In re Micron Tech. Inc. Sec. Litig.*, 247 F.R.D. 627, 634 (D. Idaho 2009); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 186 (S.D.N.Y. 2008); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 280-81 (S.D.N.Y. 2008); *Ross v. Abercrombie & Fitch Co.*, 2008 U.S. Dist. LEXIS 74538, at *2 (S.D. Ohio 2008); *cf. In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*, 250 F.R.D. 137 (S.D.N.Y. 2008); *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 340 (D. Mass. 2007); *BearingPoint*, 232 F.R.D. at 543.

not close a class period on the basis of one disclosure when a subsequent disclosure caused a significant drop in stock price. The reason is that such cases present factual issues as to whether early disclosures were fully or partially curative.").

## CONCLUSION

For the reasons stated herein and in their earlier Memorandum of Law, Lead Plaintiffs respectfully submit that their Motion for Class Certification should be granted.

Dated: May 7, 2010

<div style="margin-left:40%">

Respectfully submitted,

**DUFFY & YOUNG, LLC**
By: /s/ Lee A. Walters
Brian C. Duffy (Fed. Bar # 9491)
J. Rutledge Young III (Fed. Bar # 7260)
Lee Anne Walters (Fed. Bar # 10243)
96 Broad Street
Charleston, South Carolina 29401
Telephone:  (843) 720-2044
Facsimile:   (843) 720-2047
bduffy@duffyandyoung.com
ryoung@duffyandyoung.com
lwalters@duffyandyoung.com

*Liaison Counsel*


**BERMAN DeVALERIO**
Norman Berman, Esq.
Jeffrey C. Block, Esq.
Kristin J. Moody, Esq.
One Liberty Square
Boston, Massachusetts 02109
Telephone:  (617) 542-8300
Facsimile:   (617) 542-1194
nberman@bermandevalerio.com
jblock@bermandevalerio.com
kmoody@bermandevalerio.com

</div>

**POMERANTZ HAUDEK
GROSSMAN & GROSS LLP**
Marc I. Gross, Esq.
Jason S. Cowart, Esq.
R. James Hodgson, Esq.
100 Park Avenue
New York, New York 10017
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665
migross@pomlaw.com
jscowart@pomlaw.com
rjhodgson@pomlaw.com

Patrick V. Dahlstrom, Esq.
10 South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
pdahlstrom@pomlaw.com

*Co-Lead Counsel for the Class*