**Condensed Transcript**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE FORCE PROTECTION, INC.<br>SECURITIES LITIGATION | Consolidated<br>Civil Action<br>No. 2:08-cv-845-CWH |

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**CONFIDENTIAL VIDEOTAPED DEPOSITION OF**

**DAVID JAGER**

February 12, 2010
10:10 a.m.

Suite 2400
131 South Dearborn Street
Chicago, IL.

Anne E. Fogarty, Certified Shorthand Reporter



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.495.0777
Facsimile: 404.495.0766

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

**Page 33**

1  and answered.
2  BY MR. LEE:
3     Q.  You can answer the question.
4     A.  I don't recall a specific date. There
5  was an intervening call.
6     Q.  Was it during the month of January?
7     MS. SMOLLAR: Objection.
8       You can answer.
9  BY THE WITNESS:
10    A.  It could have been January. I don't
11 remember it specifically.
12 BY MR. LEE:
13    Q.  Do you have any recollection as to how
14 long ago that call was relative to today's date?
15    MS. SMOLLAR: Objection.
16      You can answer.
17 BY MR. LEE:
18    Q.  You can always answer unless she tells
19 you not to. She'll be specific.
20    A.  Okay.
21      So I believe it was in 2010.
22    Q.  Okay. Who participated in that
23 telephone call in 2010?
24    A.  Jason Cowart. That was it.

**Page 34**

1     Q.  Just you and Jason Cowart?
2     A.  Yes.
3     Q.  And I just want to be clear. Are you
4  saying those are the only two people that you
5  remember being on the call or you're certain that
6  the only two people on the call were yourself and
7  Mr. Cowart?
8     MS. SMOLLAR: Objection.
9  BY THE WITNESS:
10    A.  So I believe we were the only two on the
11 line.
12 BY MR. LEE:
13    Q.  Okay. And prior to today those are the
14 only two telephone calls you can remember that you
15 participated in with members of the Pomerantz firm?
16    MS. SMOLLAR: Objection.
17 BY THE WITNESS:
18    A.  Those are two that I recall. I'm not
19 certain if there was another time in there that we
20 spoke.
21 BY MR. LEE:
22    Q.  Okay.
23      Have you ever had any written
24 correspondence with lawyers at the Pomerantz firm?

**Page 35**

1     A.  I think the answer to that is yes. I
2  signed some documents and we exchanged them.
3     Q.  Okay. Do you know Jim Capasso?
4     A.  That name is familiar. I don't know him
5  personally.
6     Q.  You've never met personally with Jim
7  Capasso?
8     A.  No.
9     Q.  Have you ever spoken on the phone with
10 Jim Capasso?
11    A.  Not directly. I don't know if he was on
12 a conference call when we were there. I don't
13 recall specifically.
14    Q.  Okay. Have you ever met in person with
15 any person that you recognize as a representative of
16 an entity called the Laborers' Annuity and Benefit
17 Fund of Chicago?
18    A.  No.
19    Q.  Ever spoken on the phone with such a
20 person?
21    A.  No direct communication. If they were
22 on a conference call, I didn't know about it.
23    Q.  Okay.
24    A.  I don't know.

**Page 36**

1     Q.  Do you know Gary Trautman?
2     A.  Yes. Not personally, I know the name.
3     Q.  Where do you know the name from?
4     A.  He's part of the group, the lead
5  plaintiff.
6     Q.  Have you ever met with Mr. Trautman in
7  person?
8     A.  No.
9     Q.  Have you ever spoken directly on the
10 phone to Mr. Trautman?
11    A.  Not directly. Again, I don't know if he
12 was on a conference call.
13    Q.  I'm not going to mark this again. This
14 was marked yesterday as Poulikakos 2. Or not
15 yesterday; rather, this was marked on the Panteli
16 Poulikakos deposition on February 10 as Poulikakos
17 2. It is a document styled as Joint Declaration in
18 Support of the Chicago Laborers Group's Motion for
19 Appointment as Lead Plaintiff and for Approval of
20 its Selection of Lead Counsel.
21      Mr. Jager, please take the time you need
22 to look through the document. We'll get to specific
23 questions, but I just want to see first if you
24 recognize the document?



ESQUIRE
an Alexander Gallo Company

Toll Free: 877.495.0777
Facsimile: 404.495.0766

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

## 41

1  teleconference to discuss the status and management
2  of this action." Do you see that, sir?
3      A.  Yes.
4      Q.  Do you recall participating in that May
5  27, 2008, telephone conference?
6      MS. SMOLLAR: Objection.
7  BY THE WITNESS:
8      A.  No.
9  BY MR. LEE:
10     Q.  The next sentence reads: "Pursuant to
11 that discussion, we have agreed to jointly
12 participate in conference calls with counsel as
13 necessary, and in any event at least quarterly in
14 addition to regular written updates." Do you see
15 that?
16     A.  Yes.
17     Q.  When you signed this document on May 27,
18 2008, Mr. Jager, was it your understanding that --
19 well, strike that.
20         When you signed this document, had you
21 agreed to participate in conference calls with
22 counsel as necessary, and in any event at least
23 quarterly?
24     MS. SMOLLAR: Objection; lack of foundation,

## 42

1  misleading.
2  BY MR. LEE:
3      Q.  You can answer the question.
4      A.  So I agreed to meet as necessary with
5  counsel. And I also understood that I wasn't
6  initially necessary to participate in discussion
7  with counsel unless specifically requested, or if I
8  was interested in it I was welcome to participate in
9  initial contact.
10     Q.  What I'm trying to understand is after
11 May 27, 2008, did you agree to jointly participate
12 in conference calls with counsel as necessary, and
13 in any event at least quarterly?
14     MS. SMOLLAR: Objection; lack of foundation,
15 form, misleading.
16         You can answer.
17 BY THE WITNESS:
18     A.  Me personally I didn't agree -- I agreed
19 to be there as necessary but not necessarily
20 quarterly.
21 BY MR. LEE:
22     Q.  Okay. So at the time you signed this
23 document your understanding was that you would
24 participate in calls, meetings, whatever, as

## 43

1  necessary but you weren't committing that you would
2  participate at least quarterly; is that correct?
3      MS. SMOLLAR: Objection.
4         You can answer.
5  BY THE WITNESS:
6      Q.  Me personally my agreement was not
7  necessarily quarterly.
8  BY MR. LEE:
9      Q.  Okay.
10     MS. SMOLLAR: David, are you okay? Do you
11 need a break? We've been going a little over an
12 hour now, so.
13     THE WITNESS: I'm okay.
14     MS. SMOLLAR: Okay. Let's go another 15 or so
15 minutes and then take a break.
16     MR. LEE: Sure, that's fine. We can take a
17 break any time today, sir.
18     THE WITNESS: Okay. Thank you.
19 BY MR. LEE:
20     Q.  All right. Still looking at Paragraph 9
21 of this document, Mr. Jager, and the same sentence
22 that we've been focusing on, the end of the sentence
23 refers to "regular written updates." Do you see
24 that?

## 44

1      A.  Yes.
2      Q.  Since May 27, 2008, have you received
3  regular written updates regarding this lawsuit?
4      MS. SMOLLAR: Objection.
5         You can answer.
6  BY THE WITNESS:
7      A.  So as there are developments in the case
8  I get copies of the documents that are involved.
9  BY MR. LEE:
10     Q.  Okay. Can you think of anything else in
11 the way of regular written updates that you've
12 received?
13     MS. SMOLLAR: Objection.
14 BY THE WITNESS:
15     A.  No.
16 BY MR. LEE:
17     Q.  Do you keep a file relating to this
18 lawsuit?
19     A.  I have some saved e-mails, that's all.
20     Q.  No physical hard paper document file?
21     A.  No.
22     Q.  Are the e-mails e-mails between you and
23 your attorneys in this lawsuit?
24     A.  Some.



Toll Free: 877.495.0777
Facsimile: 404.495.0766

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

### 49

1    MS. SMOLLAR: Objection.
2    BY THE WITNESS:
3        A.    If I weren't asked to?
4    BY MR. LEE:
5        Q.    Let me ask you a different question.
6              As you sit here today can you think of
7    any reason other than being asked to do so by your
8    attorneys that you would participate in a court
9    appearance in this case?
10       MS. SMOLLAR: Objection, but you can answer.
11   BY THE WITNESS:
12       A.    Well, as lead plaintiff if I've had some
13   disagreement in the process of litigation or
14   something like that, I might engage another source
15   to arrange something like that. But I have no
16   indication that there is any problems at this point
17   and I don't see a need for that.
18   BY MR. LEE:
19       Q.    Okay. Let's look at Paragraph 10. And
20   just at the outset, this paragraph has three
21   sentences that have "we," talking about what, quote,
22   we understand or believe or plan to do. Did you
23   understand when you signed this document that you
24   were joining in the representations made in

### 50

1    Paragraph 10?
2        A.    Yes.
3        Q.    So the first sentence reads, "We
4    understand that Lead Plaintiffs' role under the
5    PSLRA is to select and retain Lead Counsel and to
6    supervise the prosecution of lawsuit." Do you see
7    that?
8        A.    Yes.
9        Q.    What is the PSLRA?
10       MS. SMOLLAR: Objection.
11   BY THE WITNESS:
12       A.    I assume it's the governing body that --
13   I understand it to be the governing body that
14   provides the process in which -- the process
15   required to proceed with these proceedings.
16   BY MR. LEE:
17       Q.    Okay. The next sentence says, "We
18   believe that Berman DeValerio and Pomerantz are
19   highly qualified and adequate to represent the
20   interests of the Class." Do you see that?
21       A.    Yes.
22       Q.    At the time you signed this document on
23   May 27, 2008, you held the belief that Berman
24   DeValerio and Pomerantz are highly qualified and

### 51

1    adequate to represent the interests of the class,
2    correct?
3        A.    Yes.
4        Q.    At the time you signed this document
5    what was the basis for that belief?
6        A.    So it's based on recommendations from
7    Panteli Poulikakos.
8        Q.    Okay. Other than those representations
9    from Panteli Poulikakos did you do anything
10   personally to satisfy yourself that Berman DeValerio
11   was highly qualified and adequate to represent the
12   interests of the class?
13       MS. SMOLLAR: Objection, mischaracterization
14   of prior testimony.
15   BY THE WITNESS:
16       Q.    No, I trusted Panteli's opinion in this
17   regard.
18   BY MR. LEE:
19       Q.    Okay. And other than -- other than
20   getting Panteli's opinions, did you do anything
21   prior to signing this document to satisfy yourself
22   that the Pomerantz law firm was highly qualified and
23   adequate to represent the interests of the class?
24       A.    Nothing more than consulting with

### 52

1    Panteli Poulikakos.
2        Q.    Okay. The last sentence of Paragraph 10
3    reads, "Moreover, we are committed to overseeing
4    Co-Lead Counsel's prosecution of this litigation, in
5    order to ensure that the matter is handled
6    efficiently and without duplication of work." Do
7    you see that?
8        A.    Yes.
9        Q.    What have you personally done to ensure
10   that this matter is handled efficiently?
11       A.    Well, I review updates and developments
12   in the case when they're available and make sure
13   that the information that I've been presented makes
14   sense and is coherent.
15       Q.    Mr. Jager, still looking at this same
16   document, I'd like you to turn to the page that at
17   the top is marked Page 9 of 18, and specifically I'd
18   like to direct your attention to Paragraph 6, which
19   starts on that page and continues on to the next
20   page. Please just take a second to read over that
21   paragraph.
22              (WHEREUPON, a short pause was had.)
23   BY THE WITNESS:
24       Q.    Okay.



Toll Free: 877.495.0777
Facsimile: 404.495.0766

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com

### 101

1  A.  So I remember the ones I imagined, but I
2  didn't actually search locations that could contain
3  documents like that because I didn't believe that I
4  retained any information during the class period.
5  There is a document cutoff date, prior to the
6  document cutoff date, so as I searched my soul I
7  couldn't find anything and I didn't produce any
8  documents in response to this request.
9  Q.  Okay.  What was the document cutoff date
10 that you just mentioned?
11 A.  I don't recall what it was specifically.
12 Is it in here?
13 MS. SMOLLAR:  I'm just going to object here.
14 The question --
15 BY MR. LEE:
16 Q.  It's not in here.
17 MS. SMOLLAR:  I just want to object to your
18 question on the witness with respect to what is the
19 document cutoff date because I think that we have
20 taken a position about what documents in terms of
21 dates would be relevant to defendants and we've told
22 the defendants our position and produced documents
23 pursuant to that date.
24 MR. LEE:  Let me just look at what it is you

### 102

1  did tell us --
2  MS. SMOLLAR:  Okay.
3  MR. LEE:  -- again.
4  (WHEREUPON, a short pause was had.)
5  MR. LEE:  Counsel, I'm reading from the Lead
6  Plaintiff's Responses and Objections to Defendants'
7  First Set of Request for Production of Documents.
8  Let me get you a copy.
9  (WHEREUPON, the document was tendered
10 to counsel.)
11 MR. LEE:  I'm looking at Page 7 of the
12 document under Paragraph 5 of your -- of the Lead
13 Plaintiffs' Objections to Defendant's Instructions.
14 The very last sentence of that paragraph reads, "As
15 to the governing time period, unless expressly
16 stated otherwise in any specific response, lead
17 plaintiffs will produce nonprivileged responsive
18 documents prepared, generated or published during
19 the time period from January 1, 2006, through
20 March 14, 2008, and nonprivileged responsive
21 documents prepared, generated or published after the
22 relevant period that relate to both -- relate both
23 to events during the relevant period and the claims
24 or defenses in this action."

### 103

1  Okay.  I read that as a representation
2  that documents that date from a time after March 14,
3  2008, yet refer to class period events may still be
4  produced.
5  MS. SMOLLAR:  Not the documents, though, that
6  were created after the case has been filed, even if
7  they refer to.
8  MR. LEE:  Well, he's testified that there is a
9  cutoff date.  I just want to find out what he thinks
10 it is.
11 MS. SMOLLAR:  Okay.  But I'm just saying I
12 think the position we took is we didn't produce
13 documents that were created after the date of the
14 first filing in this case.  But you can ask --
15 MR. LEE:  Is that set forth in something that
16 you've provided to us?
17 MS. SMOLLAR:  Yes, it is.  And I believe it --
18 I don't know if it was oral or a letter from Jason
19 Cowart or --
20 MR. DAHLSTROM:  You can ask him the questions
21 on the cutoff.  We can deal with this after.
22 MR. LEE:  Yeah, we'll take this up later.
23 MS. SMOLLAR:  Yeah, that's fine.
24 BY MR. LEE:

### 104

1  Q.  So the question, Mr. Jager, is you
2  testified you understood there to be a cutoff date
3  as to documents you might collect.  What, as you sit
4  here today, is your understanding of what that date
5  is?
6  A.  So I have -- so I get updates on
7  progress in this case.  Any new filings, any new
8  developments I get copies of documents.  And as I
9  understand it I wasn't required to provide those
10 documents again.  And that was, you know, most of
11 the type of stuff that I could produce, I could
12 physically produce for you, and it wasn't required.
13 Q.  So you understand that you didn't
14 have -- you were under no obligation to search for
15 any documents that postdated what, your appearance
16 in this lawsuit?
17 MS. SMOLLAR:  Objection.
18 BY THE WITNESS:
19 A.  No.  No, it was more current documents
20 that communications between -- recent communications
21 between the groups and copies of these documents
22 that we're reviewing here I didn't need to produce
23 those is my understanding.
24 BY MR. LEE:



Toll Free: 877.495.0777
Facsimile: 404.495.0766

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
www.esquiresolutions.com